No. 23-2502

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

LARRY D. SAPP,

Plaintiff-Appellant,

v.

KIMBERLY FOXX,

Defendant-Appellee.

**Appeal from United States District Court
For the Northern District of Illinois, Eastern Division
No. 22-CV-5314
Honorable Edmond E. Chang, Judge Presiding.**

**BRIEF OF DEFENDANT-APPELLEE**

KIMBERLY M. FOXX
State's Attorney of Cook County
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5967
jessica.wasserman@cookcountyil.gov

CATHY MCNEIL STEIN
Chief, Civil Actions Bureau
JONATHON D. BYRER
Supervisor, Civil Appeals & Special Projects
JESSICA L. WASSERMAN
Assistant State's Attorneys
*Of Counsel*

# TABLE OF CONTENTS

_____

TABLE OF AUTHORITIES ............................................................................ii

JURISDICTIONAL STATEMENT ........................................................... 1

ISSUE PRESENTED ...................................................................... 7

STATEMENT OF THE CASE ............................................................... 7

SUMMARY OF ARGUMENT ............................................................. 11

ARGUMENT ................................................................................ 12

    I.    THE STATE-COURT JUDGMENT AGAINST SAPP PRECLUDES SAPP'S EIGHTH AMENDMENT CLAIM……………………...………13

        a.  ISSUE PRECLUSION BARS SAPP'S EIGHTH AMENDMENT CLAIM……………………………………………14

        b.  CLAIM PRECLUSION ALSO BARS SAPP'S CLAIM…………….16

    II.   ILLINOIS' PROHIBITION ON FELONS HOLDING PUBLIC OFFICE DOES NOT VIOLATE THE EIGHTH AMENDMENT…………………………………………………18

        a.  THE INELIGIBILITY STATUTES ARE NOT PUNITIVE……….19

        b.  THE INELIGIBILITY STATUTES ARE NOT CRUEL AND UNUSUAL…………………………………………………..…23

    III.  THE INELIGIBILITY STATUTES DO NOT VIOLATE THE EXCESSIVE FINES CLAUSE……………………………………………………25

    IV.  SAPP FORFEITED ANY ARGUMENT REGARDING SOVEREIGN IMMUNITY……………………………………………..………28

CONCLUSION ..................................................................... 29

# POINTS & AUTHORITIES

———————

## CASES

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ..................................................... 4

*Am. Family Mut. Ins. Co. v. Savickas*, 193 Ill. 2d 378 (2000) .................................... 14

*Artway v. Attorney General*, 81 F.3d 1235 (3d Cir. 1996) .......................................... 21

*Austin v. United States*, 509 U.S. 602 (1993) ..................................................... passim

*Ballweg v. Springfield*, 499 N.E.2d 1373 (Ill. 1986) .................................................. 15

*Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257 (1989) ............................... 26

*Buscemi v. Bell*, 964 F.3d 252 (4th Cir. 2020) .............................................................. 3

*City of L.A. v. Patel*, 576 U.S. 409 (2015) ................................................................... 27

*Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981) ............................................ 2

*EEOC v. Flambeau, Inc.*, 846 F.3d 941 (7th Cir. 2017) ................................................ 5

*Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519 (7th Cir. 2011) ............... 14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ......................... 5

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S.

    167 (2000) ................................................................................................................ 2, 4

*Gecker v. Estate of Flynn*, 867 F.3d 743 (7th Cir. 2017) ............................................. 14

*Goldhamer v. Nagode*, 621 F.3d 581 (7th Cir. 2010) .................................................... 6

*Graham v. Florida*, 560 U.S. 48 (2010) ....................................................................... 23

*Grashoff v. Adams*, 65 F.4th 910 (7th Cir. 2023) ........................................................ 27

*Hadzi-Tanovic v. Johnson*, 62 F. 4th 394 (7th Cir. 2023) ........................................... 18

*Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939 (7th Cir. 1981) ........ 15

ii

*J.B. v. Woodard*, 997 F.3d 714 (7th Cir. 2021) ............................................................ 5

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) ............................................................ 2

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) .................................................. 21

*Kubiak v. City of Chicago*, 810 F.3d 476 (7th Cir. 2016) ........................................... 12

*Leal v. Krajewski*, 803 F.2d 332 (7th Cir. 1986) ........................................................ 13

*Licari v. City of Chicago*, 298 F.3d 664 (7th Cir. 2002) ............................................. 17

*Lockett v. Ohio*, 438 U.S. 586 (1978) .................................................................... 19, 23

*M.S. v. Brown*, 902 F.3d 1076 (9th Cir. 2018) ............................................................. 3

*Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249 (1933) ........................................ 4

*Parker v. Lyons*, 2013 U.S. Dist. LEXIS 206164 (C.D. Ill. Nov. 21, 2013) ............... 17

*Parker v. Lyons*, 757 F.3d 701 (7th Cir. 2014) ........................................................... 18

*Parungao v. Cmty. Health Sys.*, 858 F.3d 452 (7th Cir. 2017) .................................... 12

*Pavlock v. Holcomb*, 35 F.4th 581 (7th Cir. 2022) ....................................................... 3

*People ex rel. Ryan v. Coles*, 381 N.E.2d 990 (Ill. App. 1978) .................................. 21

*People ex rel. Smith v. Jenkins*, 325 Ill. 372 (1927) .................................................... 2

*People v. Agpawa*, 105 N.E. 3d 846 (1st Dist. 2018) .................................................. 15

*People v. Hofer*, 843 N.E.2d 460 (Ill. App. 2006) ........................................... 21, 24, 27

*People v. Sapp*, 22-CH-02657 (Cook County Cir. Ct.) ........................................... 4, 17

*Puffer v. Allstate Ins. Co.,* 675 F.3d 709 (7th Cir. 2012) ........................................... 28

*Reed v. Illinois*, 808 F.3d 1103 (7th Cir. 2015) ......................................................... 14

*Richardson v. Ramirez*, 418 U.S. 24 (1974) .............................................................. 23

*River Park v. City of Highland Park*, 184 Ill. 2d 290 (1998) ..................................... 16

*Rose v. Bd. of Election Comm'rs,* 815 F.3d 372 (7th Cir. 2016)................................ 14

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (7th Cir. 2005)............ 6

*Shoul v. DOT, Bureau of Driver Licensing*, 173 A.3d 669 (Pa. 2017) ........................ 21

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ................................................. 2

*Tebbens v. Levin & Conde*, 107 N.E.3d 263 (Ill. App. 2018) ..................................... 18

*Thompson v. Ortiz*, 619 Fed. Appx. 542 (7th Cir. 2015) ............................................. 3

*United States v. Bajakajian*, 524 U.S. 321 (1998) ..................................................... 27

*United States v. Halper*, 490 U.S. 435 (1989) ........................................................... 19

*United States v. Kozminski*, 487 U.S. 931 (1988) ...................................................... 25

*United States v. Locke*, 759 F.3d 760 (7th Cir. 2014) ............................................... 25

*United States v. Rogan*, 517 F.3d 449 (7th Cir. 2008) ............................................... 26

*United States v. Webster*, 775 F.3d 897 (7th Cir. 2015)............................................ 28

*Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013 (7th Cir. 2014) ................................... 16

*Walker v. Agpawa*, 2021 IL 127206............................................................................ 22

*White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021) ............................ 12

*Wilson v. Seiter*, 501 U.S. 294 (1991) ....................................................................... 19

*Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 924 (7th Cir. 2008)........................ 1, 3

**STATUTES**

10 ILCS 5/29-15 ...................................................................................................... 12, 25

28 U.S.C. § 1291...........................................................................................................6

65 ILCS 5/3.1-10-5 ..................................................................................................... 12

730 ILCS 5/5-5-5-6 ..................................................................................................... 22

65 ILCS 5/3.1-10-5(b) ................................................................................ 25

**CONSTITUTIONAL PROVISIONS**

GA. CONST. ART. II ................................................................................... 24

Ill. Const. art. V § 12 ................................................................................ 2

Ill. Const. Art. 5, § 12 .............................................................................. 25

VA. CONST. ART. II, § 1 ............................................................................ 24

**OTHER AUTHORITIES**

Aled C. Ewald, *"Civil Death": The Ideological Paradox of Criminal*

   *Disenfranchisement Law In The United States*, 2002 WIS. L. REV. 1045 .............. 20

# JURISDICTIONAL STATEMENT

The jurisdictional statement of plaintiff-appellant Larry D. Sapp is not complete and correct.

## I.    District Court Statutory Jurisdiction

On September 28, 2022, Sapp filed this suit against Illinois Governor J.B. Pritzker and Cook County State's Attorney Kimberly Foxx, alleging that the Illinois statutes barring felons from holding public office, 65 ILCS 5/3.1-10.5(b); 10 ILCS 5/29-15 (hereafter, the "ineligibility statutes"), violated his Eighth Amendment rights. R. 1.[1]  In his initial complaint, Sapp sought a declaration that the ineligibility statutes violate the Eighth Amendment, or in the alternative, a court order mandating that Governor Pritzker pardon him.  *Id.* ¶¶ 67–68.

Although Sapp claimed to bring his suit solely under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, it is well-settled that the Act is not a freestanding source of federal subject-matter jurisdiction. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 924 (7th Cir. 2008). That said, Sapp's claims are properly understood as arising under 42 U.S.C. § 1983 because he challenged state action under color of law that allegedly violated his constitutional rights. The fact that Sapp failed to specifically identify section 1983 in his complaint is irrelevant. *See*

---

[1]  We cite the district court record as "R.___."  Although Sapp's docketing statement and notice of appeal both identify the "Illinois Attorney General" as a defendant in his official capacity, the attorney general was never a defendant in the proceedings below, and is not listed as a party in this court's docket.

*Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam). Accordingly, the district court had statutory jurisdiction over Sapp's claims under 28 U.S.C. § 1331.

## II.    District Court Article III Jurisdiction

### A.    Jurisdiction Over Claims Against Governor Pritzker

Starting with Sapp's claims against Governor Pritzker, Sapp was obligated to "demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000), and had to do so at the time suit was filed, *id.* at 180. Below, Sapp failed to establish that he had Article III standing to seek his requested relief against Governor Pritzker. To establish Article III standing to seek desired relief, a plaintiff must allege (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Here, Sapp asked the court to order Governor Pritzker to pardon both him and all those who had petitioned for a pardon. R. 1 at ¶¶ 67–68.

Sapp could not establish redressability regarding his requested relief. The power to grant pardons is vested exclusively in the governor.  ILL. CONST. ART. V § 12. It "cannot be controlled by either the courts or the legislature." *People ex rel. Smith v. Jenkins*, 325 Ill. 372, 376 (1927); *see Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981) ("[P]ardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review."). And a court cannot redress an injury if it

does not have the authority to provide the requested relief. *See Pavlock v. Holcomb*, 35 F.4th 581, 588 (7th Cir. 2022); *see also Buscemi v. Bell*, 964 F.3d 252, 259 (4th Cir. 2020); *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("Even where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to use such relief."). Because the district court could not grant Sapp, or the third parties on whose behalf he purported to act, the pardon relief he requested, Sapp lacked standing to seek that relief, depriving the district court of Article III jurisdiction over that request.

That left only Sapp's request for declaratory relief, but the declaratory judgment statute is not a freestanding source of federal jurisdiction, which must be found elsewhere. *E.g.*, *Ho-Chunk Nation*, 512 F.3d at 924. Absent Article III jurisdiction to seek the only other relief sought from Governor Pritzker—an injunction forcing his pardon—Sapp lacked an independent jurisdictional basis for his declaratory claim. As a result, the district court lacked Article III jurisdiction over Sapp's claims against Governor Pritzker.

## B. Claims Against State's Attorney Foxx

When Sapp filed his initial complaint, he sought a declaration that the Illinois statutes barring felons from holding office were unconstitutional, but he did not seek injunctive or monetary relief against Defendant Foxx. *See* R. 1. A plaintiff lacks standing to seek declaratory judgment where a declaration of the parties' legal rights will provide no relief. *Thompson v. Ortiz*, 619 Fed. Appx. 542, 544 (7th Cir. 2015). Although Sapp later requested injunctive relief against Foxx, standing must

be established at the time suit is filed. *Friends of the Earth*, 528 U.S. at 180.

Regardless, Sapp had standing to bring this lawsuit because his initial suit would

have been justiciable as a request for an injunction. *Nashville, C. & St. L. Ry. v.*

*Wallace*, 288 U.S. 249, 264 (1933) ("[T]he prayer for relief by injunction is not a

necessary prerequisite to the exercise of judicial power…"); *see also Aetna Life Ins.*

*Co. v. Haworth*, 300 U.S. 227, 241 (1937) ("[I]t is not essential to the exercise of the

judicial power that an injunction be sought."). This is because the focus is on

"substance" rather than "form," making a case justiciable "so long as the case

retains the essentials of an adversary proceeding, involving a real, not hypothetical,

controversy." *Wallace*, 288 U.S. at 259, 264; *see also Haworth*; 300 U.S. at 240–41.

Such a controversy existed at the time Sapp filed his lawsuit: Sapp alleged

that he had been elected to public office and Foxx was attempting to remove him

from that office. R. 1. Moreover, a judgment by the court would be of a "conclusive

character" rather than an "opinion advising what the law would be upon a

hypothetical state of facts," *Haworth*, 300 U.S. at 241, because Sapp was essentially

asking the court to determine whether his prior convictions should bar him from

holding public office.

Nor did the *Rooker-Feldman* doctrine limit the district court's jurisdiction. In

his complaint, Sapp argued that a declaratory judgment in the federal case "will

end the controversy and case" in his then-pending state court case involving the

same matter, *People v. Sapp*, 22-CH-02657 (Cook County Cir. Ct.). R. 1 at ¶ 65. The

*Rooker-Feldman* doctrine bars federal courts from deciding "cases brought by state

court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). On September 30, 2022, the state court issued a final order granting the State's motion for summary judgment. R. 34-4. Sapp, however, filed his federal lawsuit two days prior to that decision, on September 28, 2022. R. 1. Because he filed his federal suit before the state court case terminated, Sapp was not a "state-court loser" for purposes of *Rooker-Feldman*. *J.B. v. Woodard*, 997 F.3d 714, 723 (7th Cir. 2021).

That said, any claim for injunctive relief against Foxx relating to the state judicial proceedings seeking to remove Sapp from public office subsequently became moot. At the time Sapp filed his federal lawsuit, he had been elected to public office as a village trustee, and Foxx was engaged in a *quo warranto* action to remove him based on his prior felony convictions. R. 1 ¶¶ 6, 12. Two days after Sapp filed this suit, the circuit court ordered him removed from office, R. 34-4, and Sapp did not appeal that ruling. At that point, Sapp was at no risk that Foxx would take further action to enforce Illinois law requiring his removal from his elected office, for the simple reason that he was already removed from office, obviating the need for any future action by Foxx to remove him from office. Moreover, at that point, any injury to Sapp stemmed not from Foxx's actions, but from the order of the circuit court. The district court lost Article III jurisdiction over Sapp's claims at this point, because a district court lacks such jurisdiction over a moot controversy. *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 946 (7th Cir. 2017).

A temporary lack of standing does not require dismissal after standing is reacquired, however, *see Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1204 (7th Cir. 2005) (collecting authority), and the loss of standing here was only temporary. Following his removal from office by the circuit court, Sapp filed an amended complaint and a motion for a temporary restraining order against Foxx, seeking both declaratory and injunctive relief, alleging that he was in the process of seeking elected office once again, and requesting that Foxx be enjoined from enforcing against him the Illinois laws barring him from office. R. 30, 42. Sapp had standing to seek injunctive relief because his recent removal from office gave him a plausible belief that Foxx would act to remove him from the ballot, or from this new office if he was reelected, and injunctive relief would likely prevent that from occurring. *See Goldhamer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010). In sum, the district court ultimately had Article III jurisdiction over Sapp's claims against Foxx.

## III. Appellate Jurisdiction

On March 15, 2023, Sapp filed an amended complaint naming only Foxx as a defendant, R. 33, thus abandoning any claims against Governor Pritzker. He also moved for a temporary restraining order against Foxx on June 2, 2023. R. 42. On June 21, 2023, the district court denied Sapp's request for a temporary restraining order and dismissed his claims against Foxx with prejudice. R. 47. The court entered judgment separately the same day. R. 48. Sapp filed his notice of appeal from that decision on July 20, 2023. R. 50. This court has jurisdiction over this appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether the district court properly dismissed Sapp's claim that Illinois statutes barring felons from holding municipal office violate the Eighth Amendment.

## STATEMENT OF THE CASE

In 1988 and 1998, Sapp pleaded guilty to two felony drug convictions. R. 33 at ¶ 27. Nonetheless, in 2021, he was elected to the board of trustees of Sauk Village. *Id*. at ¶¶ 36, 38. That position came with a monthly salary of approximately $600. *Id*. at ¶ 2. On March 23, 2022, the Cook County State's Attorney's Office brought a *quo warranto* action against Sapp in the name of the People of the State of Illinois, seeking to remove Sapp from office pursuant to the ineligibility statutes, due to his prior felony convictions. R. 34-1.

In response, Sapp filed a Petition for Relief from Disabilities under 730 ILCS 5/5-5.5-15 in the Chancery Division of the Circuit Court of Cook County. The People moved to strike that petition. The Chancery court granted the People's motion to strike, explaining that an action under Section 5/5-5.5-15 should be brought in the criminal court where Sapp was convicted. R. 42-7. The court further noted that, because the petition could not be heard in Chancery, it need not determine whether a certificate for relief from disabilities under 730 ILCS 5/5-5.5-15 would cure the defect prohibiting him from holding office. R. 42-7.

On August 2, 2022, the People moved for summary judgment on the *quo warranto* action. R. 34-2. Sapp filed a response on September 7, 2022, in which he argued that the statutes prohibiting him from holding office violated the Eighth Amendment. R. 34-3. On September 30, 2022, the court granted the People's motion for summary judgment and ordered that Sapp be ousted from the office of Village Trustee. R. 34-4. The court held that Illinois may protect the integrity of its elections by prohibiting convicted felons from holding elected office, and rejected Sapp's argument that such laws violate the Constitution. R. 34-4 at 3. Specifically, the court noted that it was not "moved by [Sapp's] claim he is being 'punished' for crimes he committed more than twenty years ago," noting that he was simply "being held to the same standard as every person who seeks to hold municipal office in Illinois." *Id*. The court also rejected Sapp's argument that his removal from the office of Village Trustee violated the Excessive Fines clause of the Eighth Amendment. *Id*. In doing so, the court explained that "the People are not seeking any fines or fees against Mr. Sapp" and that "Mr. Sapp's case law is distinguishable insofar as the cases he cites deal with an actual forfeiture proceeding instituted by the government." *Id*.

On September 28, 2022, two days before the court entered summary judgment in the People's favor, Sapp filed this federal lawsuit against Governor J.B. Pritzker and Cook County State's Attorney Kimberly Foxx in their official capacities. R. 1. Both Pritzker and Foxx moved to dismiss. R. 18, 20.

Meanwhile, Sapp filed a candidacy statement to run for another open Trustee position. R. 33 at ¶ 4. Foxx filed a motion in state court seeking to hold him in contempt. *See* R. 40-1. The state court denied that motion, clarifying that its previous order was limited to ouster and did "not extend to prevent Mr. Sapp . . . from filing a petition for candidacy for office now or in the future." R. 40-1. The court also explained that the State could challenge Sapp's candidacy petition in a separate action or, if he was elected, move to remove him again. *Id*. This was unnecessary, however, as Sauk Village ultimately rejected Sapp's name from the election. R. 33 at ¶ 4.[2]

Sapp then filed an amended complaint, purporting to sue Foxx "individually and in her official capacity, as the State of Illinois." R. 33. Sapp argued that Illinois statutes preventing felons from holding public office violate the Eighth Amendment of the United States Constitution. R. 33. at ¶¶ 63–87. Pursuant to 28 U.S.C. § 2201, he sought a declaration that 65 ILCS 5/3.1-10.5(b) and 10 ILCS 5/29-15 are unconstitutional, as well as attorney's fees and costs. R. 33. at ¶¶ 16, 88.

Foxx moved to dismiss, arguing that Sapp's claim failed because (1) it was barred by the res judicata effect of the state-court judgment; (2) it was barred by sovereign immunity; (3) the challenged statutes are facially constitutional; and (4)

---

[2] Sapp also pleaded that "[d]ue to the relentless and aggressive *[sic]* to enforce the Punishment Statutes, Plaintiff withdrew his efforts." R. 33 at ¶ 56. To the extent Sapp intends to state that he withdrew from the election himself, this appears inconsistent with his earlier claim that Sauk Village rejected his name. *Id*. at ¶ 4. Regardless, the analysis is the same.

Sapp failed to state a personal-capacity claim against Foxx. R. 34. In response, Sapp argued [briefly set out what he said, and note what he didn't respond to].

After briefing on the motion to dismiss was complete, Sapp moved for a temporary restraining order. R. 42. He alleged that he had learned that a Sauk Village trustee planned to resign, and he sought to run for the open position. R. 42-1 at 7. He sought an injunction to prevent Foxx from preventing him from seeking the office. R. 42-1 at 2. In his briefing, Sapp made clear that his claim "strictly deal[s] with the Cruel and Unusual Clause of the Eighth Amendment—not the Excessive Fines Clause, the Double Jeopardy Clause, the Equal Protection Clause, the Commerce Clause, or any other constitutional clause Defendant would like to address." R. 46 at 9.

The district court granted Foxx's motion to dismiss and denied Sapp's motion for a temporary injunction. Sapp Appx. at 17. The court first concluded that Sapp forfeited the issue of sovereign immunity by failing to develop an argument that any exception to immunity applied. *Id*. at 5–6. It further noted that Sapp could not unilaterally dismiss his individual-capacity claims against Foxx and that he did not include any plausible allegations that Foxx was personally involved in ousting Sapp from office. *Id*. at 7–8. Regardless, the court noted that Sapp failed to respond to Foxx's argument that any personal-involvement claim would be barred by absolute prosecutorial immunity, and thus forfeited this argument as well. *Id*. at 8–9.

Finally, the court held that Sapp failed to state a claim that Illinois's felon-bar statutes violate the Eighth Amendment. Sapp Appx. at 9–16. In doing so, the

court noted that Sapp "repeatedly (and emphatically) disclaims any attempt to challenge the statutes under any other clause of the Constitution, like the Double Jeopardy clause of the Fifth Amendment." *Id*. at 9. The court concluded that Sapp had failed to state a claim under the Cruel and Unusual Clause because the statutes in question are not punitive and Sapp failed to argue that they are grossly disproportionate. *Id*. at 16. While Sapp had argued in his response to the motion to dismiss that his removal from office resulted in his forfeiture of future earnings in violation of the Excessive Fines Clause, Sapp later disclaimed this argument in his motion for a temporary restraining order, in which he stated that his amended complaint was "strictly dealing with the Cruel and Unusual Clause of the Eighth Amendment—not the Excessive Fines Clause." *Id*. at 16. The court declined to address whether res judicata barred Sapp's claim because it failed on other grounds. *Id*. at 17. This appeal followed.

## SUMMARY OF ARGUMENT

_____

The district court correctly granted Foxx's motion to dismiss. Sapp's claim is barred by the res judicata effect of the final state-court judgment rejecting his constitutional arguments. On the merits, Sapp's Eighth Amendment cruel-and-unusual punishment claim fails because the challenged statutes are neither punitive nor excessive, and his excessive-fines claim is expressly waived and anyway fails for want of any fine. Finally, Sapp forfeited any argument on sovereign immunity by failing to address that issue below, then compounded that forfeiture by failing to address the court's forfeiture ruling on appeal.

# ARGUMENT

————————

A two-time felon, Sapp is ineligible to serve in public office under longstanding Illinois statutes. 65 ILCS 5/3.1-10-5; 10 ILCS 5/29-15. The district court dismissed Sapp's Eighth Amendment challenge to those statutes, recognizing that a prohibition on serving in public office is not punitive in nature. This court reviews this decision de novo, *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021), and may affirm the dismissal on preclusion grounds if the allegations of the complaint and the judicially noticeable record of the other judicial proceeding establish that preclusion bars the plaintiff's claims. *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017). It may also affirm if the well-pleaded allegations of the complaint, construed in the light most favorable to the plaintiff, fail to plausibly allege a claim on which relief can be granted. *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016).

Applying these standards here, this court should affirm for four reasons. First, Sapp's claim is barred by res judicata, because a state court has already considered and rejected his argument on the merits, and that decision became a final judgment when Sapp failed to appeal it. Second, Sapp's Eighth Amendment claim fails on the merits—to constitute cruel and unusual punishment, a statute must impose punishment, and Sapp failed to plausibly allege that the ineligibility statutes prohibiting felons from serving in public office are punitive. And even assuming they were punitive in nature, they are not excessive given the nature of his past offenses and the public interests at issue. Third, Sapp has waived his

excessive-fine claim, which is anyway without merit because his loss of income due to his disqualification from office was not a fine. Fourth, Sapp has forfeited twice over any argument that sovereign immunity bars his claims in any part, first by failing to address that issue below, then again by failing to address the district court's forfeiture finding on appeal.  We address these issues in turn.

## I.     THE STATE-COURT JUDGMENT AGAINST SAPP PRECLUDES SAPP'S EIGHTH AMENDMENT CLAIM.

While Sapp argues at some length that his claims should not have been dismissed, this court need not address that issue because his claims are barred by the doctrine of res judicata.[3] Res judicata encompasses two distinct but related doctrines—issue preclusion (also known as collateral estoppel) and claim preclusion (also referred to as res judicata). *Leal v. Krajewski*, 803 F.2d 332, 334 (7th Cir. 1986). Issue preclusion applies "[w]hen an issue has already been litigated in a former suit, and the former suit precludes the relitigating of that issue in the present suit." *Id.* Alternatively, "if the issue could have been litigated in a former suit but was not, and the former suit precludes the litigation of that issue in a present suit, claim preclusion applies." *Id.* Illinois law governs either analysis because the judgment sought to be given preclusive effect was rendered by an Illinois court. *Rose v. Bd. of Election Comm'rs,* 815 F.3d 372, 374 (7th Cir. 2016); *see*

---

[3]  Although the district court declined to address res judicata because it correctly rejected Sapp's claims on the merits, the canon of constitutional avoidance counsels in favor of addressing that nonconstitutional ground for affirmance before turning to the merits, particularly since the constitutionality of a state law is at issue here. *See*, *e.g.*, *Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 632 (7th Cir. 2023).

*also Empress Casino Joliet Corp. v. Blagojevich*, 638 F.3d 519, 535 (7th Cir. 2011) ("Federal courts must give state-court judgments the same preclusive effect they would have in state court.") Both doctrines bar Sapp's claim here.

### A.      Issue Preclusion Bars Sapp's Eighth Amendment Claim.

Issue preclusion applies under Illinois law if "(1) the issue decided in the prior case is identical to the issue in the current case, (2) there was a final judgment on the merits in the prior case, and (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior case." *Gecker v. Estate of Flynn*, 867 F.3d 743, 759 (7th Cir. 2017). The party against whom this doctrine is invoked also "must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." *Am. Family Mut. Ins. Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000). Further, the party must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Reed v. Illinois*, 808 F.3d 1103, 1107 (7th Cir. 2015).

Each requirement is easily satisfied here. First, it is beyond any possible dispute that Sapp was a party to the state proceeding that removed him from office. Second, Sapp raised the same issue in that state proceeding as he does here. In each case, he argues that the challenged statutes violate the Eighth Amendment because the statutes were punitive and amounted to civil asset forfeiture. *Compare* R. 34-3 *with* R.  33 at ¶¶ 63–87. Moreover, it is beyond dispute that Sapp had a full and fair opportunity to litigate his claim in the state case, as demonstrated by his filing of a

response brief raising that issue in the state action, R. 34-3, and the state court's resolution of those arguments on their merits, R. 34-4.

Third, there was also a final judgment on the merits. A judgment on the merits is one that is "based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 943 (7th Cir. 1981). That describes the state court judgment here, which expressly concluded that Sapp had no constitutional right to run for a statutorily held position and that it was not unconstitutional to "require[e] a convicted felon who wants to run for a statutorily created office to establish to the Governor's satisfaction that he has rehabilitated himself and is worthy of the public trust.'" R. 34-4 at 3 (quoting *People v. Agpawa*, 105 N.E. 3d 846, 856 (1st Dist. 2018)). The state court also concluded that Sapp's removal from public office did not constitute a civil forfeiture in violation of the Eighth Amendment because there was "no forfeiture proceeding pending against Mr. Sapp" and the People did not seek fines or fees against him. R. 34-4 at 3. That judgment became final when Sapp declined to appeal within the time to do so; under Illinois law, a judgment is final for purposes of issue preclusion once the potential for appellate review has been exhausted. *Ballweg v. Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986).

Because all three elements of issues preclusion are satisfied here, the final judgment of the state court rejecting Sapp's Eighth Amendment challenge precludes him from bringing that same challenge in federal court, requiring dismissal of that claim.

**B. Claim Preclusion Also Bars Sapp's Claim.**

Even if this court finds that Plaintiff raises different issues in his federal complaint, his claims are nonetheless barred by claim preclusion. Unlike issue preclusion, "[c]laim preclusion applies not only to matters that were actually decided in the original action but also to matters that could have been decided." *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013, 1017 (7th Cir. 2014). Claim preclusion under Illinois law requires (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) identity of parties or their privies. *Rose v. Bd. of Election Comm'rs for the City of Chi*, 815 F.3d 372, 374 (7th Cir. 2016).

In determining whether two suits involve the same cause of action, Illinois applies a "transactional test." *Walczak*, 739 F.3d at 1016. In determining what constitutes a 'transaction' for purposes of claim preclusion, courts consider factors such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *River Park v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Under this test, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id*.

Consideration of these factors makes clear that the federal and state case involve the same cause of action. At issue in both cases is the application of laws

preventing Sapp from holding the office of Trustee of Sauk Village due to his felony convictions. A finding that these laws are unconstitutional would undermine the previous state court judgment that found Sapp ineligible to hold the Trustee position. In fact, Sapp himself previously argued that a declaratory judgment in the federal case "will end the controversy and case" in his then-pending state court case involving the same matter, *People v. Sapp*, 22-CH-02657 (Cook County Cir. Ct.). R. 1 at ¶ 65. The constitutionality of the law that was applied in the state court action is thus the same cause of action as the original state claim, and the second requirement is satisfied.

The third prong is also met in this case. The state action was filed by State's Attorney Foxx but named the People of the State of Illinois as the plaintiff. R. 34-1, 34-2. Under Illinois law, "a government and its officers are in privity for purposes of res judicata." *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002). The Illinois Supreme Court has held that state's attorneys are state officers. *Ingemunson v. Hedges*, 133 Ill. 2d 364 (Ill. 1994). "Thus, although the state was the party in the original state court case and the party here is the State's Attorney, they are in privity and satisfy this element." *Parker v. Lyons*, 2013 U.S. Dist. LEXIS 206164, *13 (C.D. Ill. Nov. 21, 2013) (holding that prior state *quo warranto* action barred plaintiff from relitigating his eligibility to hold school board seat in federal court), *aff'd by Parker v. Lyons*, 757 F.3d 701 (7th Cir. 2014), *overruled in part on other grounds by Hadzi-Tanovic v. Johnson*, 62 F. 4th 394 (7th Cir. 2023).

Because all three elements of claim preclusion are satisfied here, Sapp's current claim is barred by the judgment entered in the state action. Significantly, that result is not changed by the facts that Sapp was a defendant in the state action and Illinois is a permissive-counterclaim jurisdiction; to the contrary, claim preclusion will bar any claim that could have been brought as a counterclaim in an earlier proceeding if that claim either (1) involves the same facts as the claim raised in the earlier proceeding in which judgment was entered; or (2) would, if recognized, effectively nullify that earlier judgment. *Tebbens v. Levin & Conde*, 107 N.E.3d 263, 286 (Ill. App. 2018). Both are true here—as noted above, Sapp's current claim arises out of the same operative facts as the state court action, and recognition of that claim would necessarily nullify the earlier judgment by removing the statutory authority on which that judgment rested. Accordingly, claim preclusion also bars not only Sapp's Eighth Amendment challenge, but also any other constitutional challenge he might hope to bring against the statutes precluding him from holding public office.

## II. Illinois' Prohibition On Felons Holding Public Office Does Not Violate The Eighth Amendment.

Even if Sapp's Eighth Amendment claim were not precluded by the state court judgment against him, it fails on the merits. Under the Eighth Amendment, made applicable to the States by the Fourteenth Amendment, Illinois law may not inflict "cruel and unusual punishment" on individuals convicted of crimes. For a statute to violate this prohibition, it must (1) inflict punishment, *Wilson v. Seiter*, 501 U.S. 294, 300 (1991); (2) that is excessive in relation to the crime for which it is imposed, either because it is a purposeless and needless imposition of pain and

suffering, or is grossly out of proportion to the severity of the crime, *Lockett v. Ohio*, 438 U.S. 586, 624 (1978). Sapp failed to plausibly allege that either requirement is satisfied here, requiring dismissal. We address these failings in turn.

### A. The ineligibility statutes are not punitive.

As noted above, the Eighth Amendment applies only to punishments, *Wilson*, 501 U.S. at 300, so the threshold inquiry for any Eighth Amendment analysis is whether the challenged action can be considered punishment. As the Supreme Court has explained, when determining whether a statute imposes punishment for purposes of the Eighth Amendment, a court "must determine that it can *only* be explained as serving in part to punish." *Austin v. United States*, 509 U.S. 602, 610 (1993) (emphasis added); *accord United States v. Halper*, 490 U.S. 435, 448 (1989) ("A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can *only* be explained as also serving either retributive or deterrent purposes, is punishment") (emphasis added). To conduct this inquiry, a court considers (1) whether, at the time the Eighth Amendment was ratified, the challenged practice was understood at least in part as punishment; and (2) whether that challenged should be understood as punishment today under the statute at issue. *Austin*, 509 U.S. at 610–11.

Turning to the first inquiry, Sapp's complaint offered no well-pleaded facts indicating that a prohibition on felons serving in public office was considered punishment at the time the Eighth Amendment was ratified. Rather, Sapp complained more generally about the concept of "civil death," R. 33 at ¶¶ 56, 84, 90,

but the statutes here do not even arguably impose such a penalty, which was historically an *absolute* loss of all civil rights—a person subjected to civil death was "said to be 'dead in law' because he could not perform *any* legal function." Aled C. Ewald, *"Civil Death": The Ideological Paradox of Criminal Disenfranchisement Law In The United States*, 2002 WIS. L. REV. 1045, 1060 (emphasis added). While such an extreme measure could certainly be considered punishment, it is simply not comparable to the limited disability imposed by the ineligibility statutes. And regarding that limited disability, Sapp alleged nothing showing that the mere loss of ability to run for public office was considered punishment at the time the Eighth Amendment was ratified.

Nor did Sapp allege any well-pleaded facts showing that the ineligibility statutes should be understood today to constitute punishment. In conducting this analysis, the Court looks to the language of the statute, as well as its legislative history, for guidance. *See Austin*, 509 U.S. at 619. But nothing in the language of the statute indicates any intention to impose punishment, and Sapp conceded below that the legislature's stated intent was not to impose a criminal penalty. R. 38-1 at 10. That concession was wise, as it has been settled for nearly half a century now that the Illinois statutes prohibiting felons from serving in public office were enacted not as punishment, but "to ensure public confidence in the honesty and integrity of those serving in state and local office." *People v. Hofer*, 843 N.E.2d 460, 464 (Ill. App. 2006); *accord People ex rel. Ryan v. Coles*, 381 N.E.2d 990, 994 (Ill. App. 1978) (same). Because Sapp has failed to plausibly show that prohibiting

felons from holding office was historically considered a punishment, or that the legislature today intends it to serve as punishment, his Eighth Amendment claim necessarily fails as a matter of law, requiring its dismissal.

Sapp's arguments to the contrary are misplaced. While Sapp argues at great length that consideration of the factors set out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), shows that the ineligibility statutes impose punishment, Sapp Br. 27–34, those factors have no application in determining "whether punishment is being imposed," but rather are applied when determining "whether a nominally civil penalty should be reclassified as criminal and the safeguards that attend a criminal prosecution should be required." *Austin*, 509 U.S. at 610 n.6; *accord*, *e.g.*, *Artway v. Attorney General*, 81 F.3d 1235, 1262 (3d Cir. 1996) (explaining that under *Austin*, "*Mendoza-Martinez* is inapplicable outside the context of determining whether a proceeding is sufficiently criminal in nature to warrant criminal procedural protections of the Fifth and Sixth Amendments"); *Shoul v. DOT, Bureau of Driver Licensing*, 173 A.3d 669, 683 (Pa. 2017) (noting that *Austin* rejected application of *Mendoza-Martinez* factors to Eight Amendment).

Sapp also argues that a separate Illinois statute allowing the circuit court to issue a "certificate of relief from disabilities to an eligible offender for a conviction that occurred in that court if the court imposed the sentence," 730 ILCS 5/5-5.5-15(a), shows that the ineligibility statutes are punitive, Sapp Br. 23. But that statute is irrelevant to this appeal because it applies only to "an office created by the Constitution of this State," 730 ILCS 5/5-5-5-6(b), and municipal offices—like

Village Trustee of Sauk Village—"are not created by the Illinois Constitution, but by statutes," *Walker v. Agpawa*, 2021 IL 127206, ¶ 19. The court further explained that the qualifications to hold these offices were also created by statute, such as section 3.1-10-5(b) of the municipal code and section 29-15 of the election code—the same statutes Sapp challenges in this appeal. *Id*. Moreover, even if section 5/5-5.5-15(a) were relevant here, it does not demonstrate an intent to impose punishment, but merely specifies that complaints about disabilities arising as a result of a criminal conviction should be brought before the same court that imposed that conviction, which is thus more likely to be familiar with the circumstances of that criminal case, rather than a different court lacking that familiarity.

Sapp's remaining arguments can be disposed of in short order, as they focus primarily on arguing that the challenged statutes are wrong as a matter of policy. According to Sapp, laws that diminish the rights and privileges of those convicted of crimes are ill-advised because they have serious consequences for the individuals affected. Sapp Br. at 11. Sapp further stresses that he presented "over 400 pages of studies by universities, commissions, legal scholars, professors, and even philanthropists" making this point to the district court. *Id*. at 11. But whether Sapp's view is "indeed the more enlightened and sensible one" is not a question for the courts to decide. *Richardson v. Ramirez*, 418 U.S. 24, 55 (1974). Rather, this issue is appropriate for the legislature, "which may properly weigh and balance" Sapp's arguments against the need to ensure public confidence in the integrity of those serving in state and local offices. *Id*. This court's analysis is limited to

whether Sapp stated a claim that the ineligibility statutes impose punishment. And as already explained, he has failed to do so.

## B. The ineligibility statutes are not cruel and unusual.

Even assuming the ineligibility statutes impose punishment, Sapp's claim still fails because that supposed punishment is not cruel and unusual. As noted above, a punishment is considered cruel and unusual only if it is either a purposeless and needless imposition of pain and suffering or is grossly out of proportion to the severity of the crime. *Lockett*, 438 U.S. at 624. To apply this standard in cases involving requests for categorical rules against a type of punishment, courts first consider "objective indicia of society's standards, as expressed in legislative enactments and state practice, to determine whether there is a national consensus against" the challenged practice. *Graham v. Florida*, 560 U.S. 48, 61 (2010).[4] Then, "guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution." *Id.* (cleaned up.)

---

[4] The Supreme Court has recognized two classifications of cases implicating the cruel and unusual clause. The first involves challenges to the length of term-of-years sentences given all the circumstances in a particular case. *Graham*, 560 U.S. at 59. The second involves cases in which the Court implements the proportionality standard by certain categorical restrictions. *Id.* Sapp appears to raise a challenge under the second classification. Relying on *Graham v. California*, 560 U.S. 48 (2010), he contends that the challenged statutes are categorically unconstitutional because "because they do not contain time limits." Sapp Br. at 20.

Sapp has not plausibly alleged a national consensus against laws that prohibit ex-felons from holding office until they receive a pardon. Nor could he, because various states not only have similar laws, but have enshrined those laws in their constitutions. *E.g.*, VA. CONST. ART. II, § 1 ("No person who has been convicted of a felony shall be qualified to vote unless his civil rights have been restored by the Governor or other appropriate authority."); GA. CONST. ART. II, 2, para. III ("No person….who has been convicted of a felony involving moral turpitude, unless that person's civil rights have been restored and at least ten years have elapsed…shall be eligible to hold office…").

Nor has Sapp shown that the ineligibility statutes fail under general Eighth Amendment principles because they impose purposeless or needless suffering or are disproportionate to the severity of his crime. As to the former, there is nothing purposeless or needless about a general prohibition on felons serving in public office—again, it has long been recognized that such laws "ensure public confidence in the honesty and integrity of those serving in state and local office." *Hofer*, 843 N.E.2d at 464. And as to the latter, Sapp has not established that the statues impose any "punishment" disproportionate to the severity of his offenses. The statutes allow those with felony convictions to "petition the Governor for a restoration of rights." 10 ILCS 5/29-15; 65 ILCS 5/3.1-10-5(b). The fact that the statutes allow the ineligibility disability to be removed weighs in favor of proportionality, by allowing individuals who can show that their crimes are less severe or that they have rehabilitated themselves to run for office. See Ill. Const.

Art. 5, § 12 ("The Governor may grant reprieves, commutations, and pardons, after conviction, for all offenses on such terms as he thinks proper.").

## III. The Ineligibility Statutes Do Not Violate The Excessive Fines Clause.

Sapp also offers a cursory argument that he stated a valid claim under the Eighth Amendment's Excessive Fines Clause, Sapp Br. 36–37, but this argument is easily disposed of. To begin, Sapp explicitly waived any such claim below. R.46 at 9 ("This motion for temporary restraining order is predicated on Mr. Sapp's Amended Complaint allegations—strictly dealing with the Cruel and Unusual Clause of the Eighth Amendment—not the Excessive Fines Clause…").[5] In such circumstances, when an individual "intentionally relinquishes or abandons a known right, the issue has been waived and cannot be reviewed on appeal, not even for plain error." *United States v. Locke*, 759 F.3d 760, 763 (7th Cir. 2014).

Waiver aside, Sapp's claim is meritless. The Eighth Amendment's excessive fines clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin,* 509 U.S. at 609–10. Thus, to

---

[5] In his brief, Sapp makes constant references to slavery and the Thirteenth Amendment. *E.g.*, Sapp Br. 24–26, 28–29. To the extent that this might be understood as an attempt to reimagine his claim as arising under the Thirteenth Amendment, his waiver of such a claim below deprives this court of any authority to consider it. Regardless, such a claim would be frivolous—as the district court recognized, Sapp Appx. at 10, fn. 8, the Thirteenth Amendment prohibits only "situations in which labor is compelled by physical coercion or force of law." *United States v. Kozminski*, 487 U.S. 931, 943 (1988). Nowhere does Sapp plausibly allege that he was subjected to compelled labor, only that he was denied the chance to engage in his desired form of labor.

trigger the excessive fines clause, Sapp must plausibly allege that he has been

subjected to a fine and that fine must be excessive.

Any such claim here stumbles at the first step. As the Supreme Court has

explained, "at the time of the drafting and ratification of the Amendment, the word

'fine' was understood to mean a payment to a sovereign as punishment for some

offense." *Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 265 (1989).

Accordingly, the Court stressed "that the Excessive Fines Clause was intended to

limit only those fines directly imposed by, and payable to, the government." *Id*. But

the "payment" Sapp believes violates the Eighth Amendment here is not money he

was forced to *pay* the government, but the money he *would have earned* if allowed to

serve as Trustee for Sauk Village. R. 33 at ¶49. That is not a fine for purposes of the

Excessive Fines Clause. Indeed, Sapp offers no support for his conclusory assertion

that the loss of future earnings constitutes a fine for purposes of the Eighth

Amendment. In fact, courts have been hesitant to apply the definition of "fine" so

broadly. *See Browning-Ferris Indus.*, 492 U.S. at 259–60 (holding that punitive

damages are not "fines"); *United States v. Rogan*, 517 F.3d 449, 453–54 (7th Cir.

2008) (noting that it is not established that treble damages under False Claims Act

are "fines"). Absent a fine, Sapp's claim fails as a matter of law.

Further, the lost wages cannot be considered punitive. A fine is considered

remedial, rather than punitive, if it correlates to "damages sustained by society or

to the cost of enforcing the law." *Austin*, 509 U.S. at 621. Again, the purpose of the

ineligibility statutes is to ensure public confidence in elected officials. *Hofer*, 843

N.E.2d at 464. Because the ineligibility statutes are not punitive in nature, they avoid Eighth Amendment scrutiny. *Austin*, 509 U.S. at 622 ("The Clause prohibits only the imposition of excessive fines, and a fine that serves purely remedial purposes cannot be considered 'excessive' in any event.").

Finally, Sapp still could not show that the fine was excessive. A fine is considered excessive "if it is grossly disproportional to the gravity of [the]…offense." *Grashoff v. Adams*, 65 F.4th 910, 917 (7th Cir. 2023) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). Here, Sapp is precluded only from holding public office with a salary of $600 a month.  R. 33 at ¶ 2. He has not alleged that he is prevented from earning a living in any other way. Accordingly, he has not and cannot plead facts that show that such a minimal loss of income is grossly disproportionate to his offenses, particularly given the significant interest in public confidence in elections at stake.  And to the extent Sapp attempts to get around this problem by making a facial challenge to the disability statutes, *see* Sapp Br. at 35, Sapp cannot argue that barring felons from holding public office would be grossly disproportional under all possible applications, dooming any facial challenge here. *See City of L.A. v. Patel*, 576 U.S. 409, 415 (2015).

## IV.    Sapp Forfeited Any Argument Regarding Sovereign Immunity.

Even if this court allows Sapp's claims to proceed, it should nevertheless affirm to the extent Sapp intends to seek damages from Foxx in her official capacity as State's Attorney. In Foxx's motion to dismiss, she explained that any claim seeking damages against her in her individual capacity would be barred by

sovereign immunity. R. 34 at 7–9. Sapp did not acknowledge this argument in his response to that motion.  The district court concluded that Sapp forfeited the issue of sovereign immunity by failing to develop an argument on this point, R. 47 at 6, and Sapp does not challenge this ruling in his opening brief. Thus, he has waived this issue for purposes of this appeal. *See United States v. Webster*, 775 F.3d 897, 904 (7th Cir. 2015) (arguments not raised in party's opening brief are waived); *see also Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 718 (7th Cir. 2012) ("We have also recognized that raising an issue in general terms is not sufficient to preserve specific arguments that were not previously presented."). Foxx is therefore entitled to sovereign immunity to the extent that Sapp might hope to seek damages from her in her official capacity, requiring dismissal of that portion of Sapp's claim.

## CONCLUSION

————

This court should affirm the judgment of the district court, as modified to state that the claims against Governor Pritzker were dismissed without prejudice for lack of jurisdiction.

Respectfully submitted,

KIMBERLY FOXX
Cook County State's Attorney

BY:    /s Jessica L. Wasserman
Jessica L. Wasserman
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, Illinois 60602
312-603-5967

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)**

_____

In accordance with Fed. R. App. P. 32(a)(7)(C)(i), I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i) because it contains 7,376 words, beginning with the words "JURISDICTIONAL STATEMENT" on page 1 and ending with the words "Respectfully submitted" on page 28. In preparing this certificate, I relied on the word count of the word-processing system used to prepare the brief, which was Microsoft Word.

/s Jessica L. Wasserman
Jessica L. Wasserman, Attorney

## CERTIFICATE OF SERVICE

I certify that on January 12, 2024, I electronically filed the attached brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s Jessica L. Wasserman
Jessica L. Wasserman, Attorney